**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

VIACHESLAV MIKHAILOVSKII,

          Petitioner,

     v.

FERETI SEMAIA, et al.

          Respondents.

No. 5:26-cv-0960-DSR

**ORDER GRANTING PETITION AND ISSUING WRIT OF HABEAS CORPUS FOR IMMEDIATE RELEASE**

**1.    INTRODUCTION AND PROCEDURAL BACKGROUND**

On February 27, 2026, Viacheslav Mikhailovskii ("Petitioner"), a noncitizen who has been detained in Immigration and Customs Enforcement ("ICE") custody since on or about February 12, 2026, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging his ongoing detention as violative of, inter alia, his right to due process.  See Doc. No. 1.  The Petition names as Respondents the Warden of the Adelanto detention facility where Petitioner is detained, the Secretary of the Department of Homeland Security, the Director of Immigration and Customs Enforcement ("ICE"), and the Director of the Los Angeles Field Office of ICE, each in his or her official capacity (collectively "Respondents").  Id.

On March 3, 2026, the Court ordered the Clerk to serve on Respondents a copy of the Petition and ordered Respondents to answer the Petition.  See Doc. No. 4.  On March 10, 2026, Respondents filed their Answer, in which they stated "Respondents are not presenting an opposition argument."  Doc. No. 6.  On April 24, 2026, each side filed their voluntary consent under 28 U.S.C. § 636 to have a United Stated Magistrate Judge conduct all further proceedings in this case, decide all dispositive and non-dispositive matters, and order the entry of final judgment.  See Doc. Nos. 8, 9.  For the reasons discussed below, the Petition is GRANTED and Respondents are ordered to release Petitioner immediately.

**2.    FACTUAL BACKGROUND**

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition.  Respondents had the opportunity to dispute the facts alleged in the Petition, but declined to do so.  See Doc. No. 6.  Accordingly, the facts alleged in the Petition are undisputed and have been conceded by Respondents.  See C.D. Cal. L.R. 7-12.

Petitioner is a native and citizen of Russia.  Pet. at ¶ 1.  He entered the United States on or about October 8, 2022, at or near the San Ysidro port of entry where he presented himself as an asylum-seeking noncitizen.  Id. at ¶ 2.  Department of Homeland Security ("DHS") officials served him with a Notice to Appear and initiated removal proceedings.  Id.  They then released Petitioner pursuant to an Order of Release on Recognizance ("ROR").  Id.

For more than two years – from the time of his ROR release until February 12, 2026 – Petitioner "lived openly in the community, maintained a stable residence," obtained a Social Security number, and complied with ICE supervision.  Id. at 9:13-14.  Also during that time, the Immigration Court administratively closed his removal case while Petitioner's United States Citizen mother applied for an immigrant visa for him.  Id. at ¶ 22.  Petitioner has no criminal convictions.  Id. at 9:14-15.

On February 12, 2026, Petitioner appeared for a routine check-in with ICE, presumably pursuant to the terms of his ROR.  Id. at ¶ 4.  At that check-in, ICE re-detained Petitioner, without presenting him with any notice of alleged changed circumstances or noncompliance justifying the revocation of his ROR and re-detention.  Id. at 9:21-24.  He was taken to the ICE detention facility in Adelanto, California, where he remains.  Id. at 9:24-25.  While there, he has been denied a "meaningful individualized custody hearing before a neutral decisionmaker to determine whether detention is necessary to prevent flight risk or danger."  Id. at 10:2-3.

**3.      LEGAL STANDARD AND THE EXHAUSTION REQUIREMENT**

Habeas relief extends to those who can show they are "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'"  Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024).  Petitioner makes such reviewable claims here.

Habeas petitioners seeking relief under 28 U.S.C. § 2241 generally must first exhaust all available administrative remedies.  See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).  However, because this requirement is "prudential" and not a "jurisdictional prerequisite," it is subject to waiver.  Id. at 1045-46; Arango Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003) ("[T]he district court properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional.").  Here, Respondents do not assert any failure by Petitioner to exhaust available administrative remedies.  See generally Doc. No. 6.

Thus, any potential issue of exhaustion is waived.  The Court therefore proceeds to consider the merits of the Petition.

**4.    GROUNDS FOR RELIEF SOUGHT**

The Petition asserts three[1] legal bases for a writ compelling his release: (1) revocation of his own-recognizance release, and the resulting re-detention, violated his Fifth Amendment due process rights, (2) subjecting Petitioner to mandatory detention and denying him a custody re-determination hearing before an Immigration Judge violates the requirements of the Immigration and Nationality Act ("INA"), and (3) Respondents are violating the Administrative Procedures Act ("APA") and by subjecting him to mandatory detention under 8 U.S.C. § 1225 and not giving him an individualized bond determination under 8 U.S.C. § 1226.  See generally Pet. at pp. 23-32.[2]

**5.    DISCUSSION**

**a.    Petitioner's Detention Violates Due Process**

Petitioner's first basis for habeas relief is that his detention violates due process.  See Pet. at pp. 22-24.  As previously noted, Respondents affirmatively stated in their Answer that they do not oppose the Petition, including Petitioner's due process claim.  See generally Doc. No. 6.  Consistent with precedent, courts in this Circuit have regarded such silence as a concession.  See e.g., Soleimani v. Larose, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth

---

[1]  Petitioner also pleads as a fourth claim a request under the All Writs Act for an order preventing his transfer during the pendency of this case in order to preserve this Court's jurisdiction.  See Pet. at ¶¶ 61-62.  He does not request release on that ground, however, and because the Court is now addressing the substantive merits of his Petition and issuing the Writ compelling his immediate release, interim relief of the kind requested in his fourth claim is moot.

[2]  Petitioner also alleges he is a member of the Maldonado Bautista Bond Eligible class.  See Pet. at ¶ 50.

Amendment due process claim); Singh v. Chiang, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession).  Nevertheless, the Court independently evaluates the merits of Petitioner's due process challenge and concludes that his re-detention violates Fifth Amendment due process.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const. amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).  "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'"  Id. at 990 (quoting Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  Brewster v. Bd. of Ed., 149 F.3d 971, 982 (9th Cir.1998).  The first step is to determine whether the individual possesses a liberty or property interest that triggers due process protections.  Board of Regents v.

Roth, 408 U.S. 564, 569 (1972).  If such a constitutionally protected interest exists, the second step applies a three-step balancing test described in Mathews v. Eldridge to assess what procedural safeguards are required.  Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976).  Only after establishing a constitutionally protected interest does the analysis proceed to the second step.

**1.      Petitioner Has a Constitutionally Protected Liberty Interest in his Release on Recognizance**

As noted above, after Petitioner crossed the border and presented himself as an asylum seeker, DHS officials initiated removal proceedings against him and then released him on an ROR.  Pet. at ¶¶ 19-20.  Numerous Federal Courts have recognized a constitutionally protected liberty interest in such release.  Noncitizens in such circumstances "gained a liberty interest in their continued freedom when DHS elected to release them on their own recognizance under section 1226(a), which implied a promise that they would not be re-detained so long as they abided by the terms of their release."  Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 934 (N.D. Cal. 2025); see also Hongwei Zheng v. Kristi Noem, et al., No. EDCV 26-0675 JGB (RAO), 2026 WL 851434, at *3 (C.D. Cal. Mar. 25, 2026) ("the Court finds that under the Fifth Amendment's Due Process Clause, Petitioner has a liberty interest in due process protections prior to re-detention following a grant of release on own recognizance."); Gourav Gourav v. James Janecka, et al., No. EDCV 26-01253-MWF (DSR), 2026 WL 966568, at *2 (C.D. Cal. Apr. 7, 2026) (noncitizen detained upon entry without inspection and seeking asylum who was then released on his own recognizance pending removal proceedings and who thereafter attended his check-ins and immigration court hearings, obtained work authorization, and lived in the community for two years had a protected liberty interest in remaining out of custody following his release on his own recognizance); J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1067, 1069 (E.D. Cal. 2025) (noncitizen detained at border then released pending removal proceedings has protected liberty interest in that own-

recognizance release for purposes of due process analysis).  The release on own recognizance of a noncitizen apprehended at the border is an implicit promise that he or she would be able to stay free from detention for the duration of administrative proceedings absent changed circumstances, and thus a protected liberty interest for purposes of due process analysis.  See Banol, v. Warden, No. 5:26-CV-00529-CAS-ACCV, 2026 WL 776793, at *5 (C.D. Cal. Mar. 19, 2026).

This Court agrees with those cited above that Petitioner has a constitutionally protected liberty interest in his ROR, of which he was deprived when Respondents re-detained him.  Respondents do not dispute the point.  The question then becomes whether Respondents complied with due process in revoking that interest.

**2.      Respondents' Deprivation of Petitioner's Liberty Interest Failed to Comply with the Requirements of Due Process**

To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Mathews, courts balance the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").  Here, the balance favors Petitioner.

### A.    Private Interest

Petitioner's private interest is substantial.  As discussed above, Petitioner has a recognized interest in his liberty under the terms of his ROR.  "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  United States v. Salerno, 481 U.S. 739, 755 (1987).  "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process Clause] protects."  Id. at 690.  As such, the first Mathews factor weighs strongly in Petitioner's favor.

### B.    Risk of Erroneous Deprivation

Regarding the second Mathews factor, the risk of erroneous deprivation of that interest through the procedures used is significant because there do not appear to have been any procedures used to determine whether there were grounds to revoke Petitioner's ROR.  According to the Petition, "Petitioner was not presented with notice of any alleged changed circumstances or noncompliance justifying re-detention."  Pet. at 9:22-23.  Nor was he provided any hearing regarding his re-detention.  Id. at 10:2-5.  Respondents do not contest these allegations, nor do they offer any facts themselves about why Petitioner's ROR was revoked and he was re-detained.  See generally Answer.

Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community.  Zadvydas, 533 U.S. at 690.  "Under federal regulation, DHS's decisions to release [noncitizens] on own recognizance necessarily involved a determination that each Petitioner was not a danger to the community nor a flight risk."  Valencia Zapata, 801 F. Supp. 3d at 934 (citing 8 C.F.R. § 1236.1(c)(8)); see also J.A.E.M., 812 F. Supp. 3d at 1064 (release on own recognizance reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk) (quoting Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017)).

8

Perhaps there was some change in circumstance that could justify reconsideration of that determination and revocation of Petitioner's ROR (though Respondents do not offer any here).  A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence.  This is a significant procedural safeguard.  Without written notice and a meaningful, individualized hearing, "the risk of an erroneous deprivation of liberty is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for his detention."  Fernandez v. Semaia, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229 at *5 (C.D. Cal. Jan. 13, 2026).  As one court has reasoned:

> ICE revoked Petitioner's release at a scheduled check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard.  [Citations omitted].  Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error.  Moreover, Petitioner had previously been found suitable for humanitarian parole, which requires that a noncitizen "present neither a security risk nor a risk of absconding[.]"  [Citation omitted].  A brief pre-deprivation hearing would have substantial value in testing both the factual and legal basis for re-detention.

Asad v. Noem, No. 26-cv-620, 2026 WL 775628, at *3 (W.D. Wash. Mar. 19, 2026).  Of course here, we know even less about what basis, if any, Respondents had to revoke Petitioner's ROR and re-detain him.  Thus, the second Mathews factor similarly favors Petitioner in this case.

### C.       Government Interest

Regarding the third Mathews factor, Respondents do not assert any countervailing interest.  "The government interest in immigration enforcement in general is surely substantial."  Zerezghi v. United States Citizenship & Immigr. Servs., 955 F.3d 802, 810 (9th Cir. 2020).  As in Zerezghi, however, that is not the interest that needs to be weighed in this case.  The government interest at issue here is revocation of an ROR and re-detaining Petitioner pending the outcome of removal proceedings (which on the uncontroverted facts of this case have been administratively closed, see Pet. at ¶ 22), and in doing so without any hearing. Court's have routinely recognized that such interest is "low."  See, e.g., Gourav Gourav v. James Janecka, supra, 2026 WL 966568, at *3; Fernandez Lopez v. Wofford, No. 1:25-CV-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025).  "This is particularly so where the Government has not shown — or, as here, attempted to substantively argue — that Petitioner's detention serves either to prevent flight or a danger to the community."  Gourav Gourav, 2026 WL 966568, at *3 (internal quotations and citations omitted).

Thus, the Matthews balance tips decidedly in favor of Petitioner on this record.  The Court therefore concludes that the revocation of Petitioner's ROR and resulting re-detention on February 12, 2026, without notice or a pre-deprivation hearing, violated his procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez, 2025 WL 2959319, at *6 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after

10

having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

### b.  Immediate Release Is the Appropriate Remedy

Given this violation of Petitioners due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, No. 5:25-cv-2694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025).  The status quo is "the last uncontested status which preceded the pending controversy."  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's release on his own recognizance before his current re-detention.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly, Petitioner's release from custody is the appropriate remedy."  Id.; see Esmail v. Noem, No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.  The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Restoring Petitioner to the status quo also means release under the same conditions that were in place before the wrongful deprivation of that status.  For the same reason that Respondents may not revoke Petitioner's ROR without affording Petitioner due process, they also may not change the conditions of that release without affording Petitioner due process.  Return to the status quo similarly means return to Petitioner any personal property and documents seized at the time of his re-detention.

11

Finally, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).  Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty.  Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").  The Court notes that "Respondents are not presenting an opposition argument."  Doc. No. 6 at 2:5.  Therefore, Respondents have consented to this relief requested by Petitioner.  See C.D. Cal. L.R. 7-12.

### c.    Petitioner's Remaining Claims and Requests for Relief

Because the Court concludes that Petitioner is entitled to release on due-process grounds, it is unnecessary to reach his alternative statutory arguments under the INA and APA.  See generally Pet. at ¶¶ 41-60.

12

Finally, the Court notes that Petitioner also requested an award of reasonable attorney's fees and costs under the Equal Access to Justice Act. Id. at 35:2-3. The Court will consider requests for costs and attorney's fees upon compliance with Local Rules 54-2 (costs) and 54-7 (attorney's fees).

**6.     CONCLUSION**

Petitioner is presently in custody of Respondents in violation of the Constitution or laws or treaties of the United States; thus, a Writ of Habeas Corpus should issue pursuant to 28 U.S.C. § 2241 compelling his immediate release.

**IT IS THEREFORE ORDERED** that:

1. The Petition for Writ of Habeas Corpus is **GRANTED**.

2. Respondents shall immediately release Petitioner **VIACHESLAV MIKHAILOVSKII** from custody, reinstate his release under the same conditions that were in place before his detention on February 12, 2026, and return any personal property and documents seized at the time of his detention.

3. Respondents shall also provide Petitioner with a copy of this Order at or near the time of release.

4. Within two days of the date of this Order, Respondents shall file a status report confirming Petitioner's release and return of his personal property and documents.

5. Respondents are enjoined from re-detaining Petitioner without first providing him with notice and a pre-detention hearing before a neutral decisionmaker at which Respondents bear the burden of demonstrating that there has been a material change in circumstances justifying revocation of Petitioner's ROR and re-detention of Petitioner.

6. The Court will issue Judgment consistent with this Order. Any fee motion must be filed within the deadlines set by the Equal Access to Justice Act, 28

U.S.C. § 2412, and this Court's Local Rules.  The Court retains jurisdiction to adjudicate any collateral enforcement issues.

DATED: April 27, 2026                    _____

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE